UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

PENSION ADVISORY GROUP, LTD., *et* §
*al*,                               §
                                    §
        Plaintiffs,                 §
VS.                                 §        CIVIL ACTION NO. C-10-278
                                    §
COUNTRY LIFE INSURANCE              §
COMPANY, *et al*,                   §
                                    §
        Defendants.                 §

## **ORDER**

On this day came on to be considered (1) Country Life Insurance Company's Motion to Dismiss for Failure to State a Claim, Motion for a More Definite Statement and Motion to Strike  (D.E. 39) (2) Defendant Dale Hall's Motion to Dismiss for Lack of Personal Jurisdiction, Motion to Dismiss for Failure to State a Claim or, Alternatively, for More Definite Statement, and Motion to Strike (D.E. 40), and (3) Defendants Country Life Insurance Company's and Dale Hall's Motion to Transfer Venue (D.E. 42).

For the reasons stated herein, the Court (1) GRANTS IN PART AND DENIES IN PART Country Life Insurance Company's Motion to Dismiss for Failure to State a Claim, Motion for a More Definite Statement and Motion to Strike  (D.E. 39), (2) GRANTS IN PART AND DENIES IN PART Defendant Dale Hall's Motion to Dismiss for Lack of Personal Jurisdiction, Motion to Dismiss for Failure to State a Claim or, Alternatively, for More Definite Statement, and Motion to Strike (D.E. 40), and (3) DENIES Defendants Country Life Insurance Company's and Dale Hall's Motion to Transfer Venue. (D.E. 42).

1 / 47

## I.      Jurisdiction

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the parties are completely diverse and the amount in controversy exceeds $75,000.

## II.     Factual and Procedural Background

Plaintiffs Pension Advisory Group, Ltd, Paul Hinson, and Larry Walters filed this action on December 18, 2009 in the 156th Judicial District Court of Aransas County, Texas.  Defendant Country Life Insurance Co. ("Country Life") was served on July 23, 2010 and Defendant Dale Hall ("Hall") was served on December 9, 2010.  This action was removed to this Court on August 20, 2010.  (D.E. 1.)

Plaintiffs have amended their Complaint several times, most recently on January 12, 2011.  (D.E. 36.)[1]  The facts in this matter, as alleged by Plaintiffs, are quite long and complex, but may be briefly summarized as follows.  Plaintiff Paul Hinson, the developer of "countless innovative insurance and investment products," founded Pension Advisory Group, Ltd. ("PAG") in 1984 (then known as Tax Awareness Planning, Inc.).   One innovative "insurance and investment" product was partially memorialized in U.S. Provisional Patent Application No. 60/570,889 (the "'899 Application"), filed on May 13, 2004.   The '899 Application disclosed and claimed development of a product designed to provide "disability insurance to participants in certain tax-qualified retirement plans."  The '899 Application was assigned to PAG, and eventually matured

---

[1]  Although the filing of an amended complaint would generally render pending Rule 12(b)(6) motions to dismiss moot, the distinctions between the Second and Third Amended Complaint are not significant, and the same issues present in the Second Amended Complaint remain relevant.  (See D.E. 70-1 (comparison of Second and Third Amended Complaints).)

into U.S. Patent Application No. 10/908,419 (the "'419 Application"), on May 11, 2005. (D.E. 60 at 2-3.)

On or about October 15, 2005, Hinson first met with Larry Walters, an insurance actuary and marketing professional, who operates as a member of Diversified Growth Solutions ("DGS"), a third party Plaintiff in this action.  Hinson and Walters collaborated on new products for PAG.  (D.E. 60 at 3.)

In February 2007, Walters approached Defendant Dale Hall, Vice President and Chief Actuary for Country Life, to determine if Country Life would be interested in developing a group long term disability insurance product based in part upon the product design memorialized in the '419 Application.   Defendants Hall and Country Life were interested and later that month PAG and Country Life entered into a Mutual Confidentiality Agreement ("CDA").  In reliance on the CDA, PAG and DGS disclosed many trade secrets to Country Life, necessary to convert PAG's product design into a marketable insurance product.   The trade secrets allegedly disclosed included customer lists, customer relationships, customer data, and competitive knowledge of insurance regulations and processing.  (D.E. 60 at 3-4.)

Hinson and Walters worked regularly with Hall and other Country Life staff members to develop the product, and Country Life was to market PAG's product under the name Retirement Contributions Protector ("RCP").  PAG and Country Life then entered into several agreements, namely an Exclusivity Agreement (dated July 22, 2008) and two Facilitation Agreements (dated August 11 and September 22, 2008).  Thereafter, in November 2008, Wade Harrison, Vice President of Country Life requested that Hinson and Walters discontinue approaching him directly, and instead work through their

attorneys.   At that point, questions as to ownership of the products at issue arose.

According to Plaintiffs, Country Life did not initially claim any ownership interest in the

product or information at issue.  (D.E. 60 at 4-7.)

In May 2009, Hinson advised Country Life that PAG's patent attorneys filed a

continuation-in-part application claiming priority to the '419 Application, that would

incorporate computer processing methodology into the claims, as required by the U.S.

Patent & Trademark Office ("USPTO").   This application was formally filed on July 10,

2009, as U.S. Application No. 12/501,326 (the "'326 Application").   However, Country

Life representatives, including Hall, informed Hinson and Walters that they believed they

owned the information in the '326 Application.   Plaintiffs state that Country Life

demanded that Hinson withdraw the '326 Application on the grounds that it contained

Country Life's confidential and propriety information.   Hinson agreed not to publish the

'326 Application until issues with Country Life could be resolved.[2]  PAG filed a second

continuation-in-part application, U.S. Application No. 12/573,020 ("'020 Application")

on October 2, 2009, claiming the benefit of PAG's previous applications with a non-

publication request.   This prevented the '326 Application from issuing as a patent and

delayed PAG's collection of royalties.  (D.E. 60 at 7-9.)

Plaintiffs state that they requested evidence supporting Country Life's claims of

ownership, but no such evidence was ever provided.   Country Life, however, continued

its demand that Hall be listed as an inventor on the '020 Application.   Plaintiffs allege

---

[2] Publication of a patent application is governed by 35 U.S.C. § 122(b).   Under this section, "each
application for a patent shall be published . . . promptly after the expiration of a period of 18 months from
the earliest filing date for which a benefit is sought under this title."  35 U.S.C. § 122(b).  As such, the
"public receives notice of original claims within a specified time."  Ariad Pharmaceuticals, Inc. v. Eli Lilly
and Co., 598 F.3d 1336, 1371 (Fed. Cir. 2010).

that Country Life's actions have had a significant financial impact on the businesses of PAG and DGS, as well as on Hinson's health.  (D.E. 60 at 9.)

On December 18, 2009, PAG, Hinson, and Walters filed this action in the 156th Judicial District Court of Aransas County, Texas, seeking a declaratory judgment that the '020 Application did not contain information owned by or confidential to Country Life. Thereafter, on February 25, 2010, Country Life filed a protest with the USPTO stating that the description in the '326 Application contained information which was owned by and confidential to Country Life.  The USPTO accepted this protest, and prevented issuance of the '326 Application until the protest was resolved.  Plaintiffs state that Country Life's protest contained numerous trade secrets of PAG and DGS including customer data and customer lists.  The protests also contained a declaration from Hall asserting that he owned the information contained in the '020 Application.  Hinson, however, filed a declaration in the '326 Application that he believed he was the sole inventor of the subject matter at issue.  (D.E. 60 at 9-10.)

Following service on July 23, 2010, Country Life removed this action to this Court on August 20, 2010.  (D.E. 1.)   Country Life answered on November 17, 2010, and filed a counterclaim.  (D.E. 31, 47.)   Country Life seeks, inter alia, a declaratory judgment that it is the rightful owner of the propriety and confidential information that it developed, that Counter-Defendants unlawfully used the property at issue, breached the Mutual Confidentiality Agreement and the Exclusivity Agreement, and that Country Life is entitled to royalties and other profits associated with the Retirement Contributions Protector product.  (D.E. 47 at 28.)  Country Life also seeks a preliminary and permanent injunction, enjoining Counter-Defendants from using, disclosing, or publishing Country

Life's propriety and confidential information, filing or publishing any service mark or patent applications containing Country Life's propriety information, and marketing the Retirement Contributions Protector without Country Life's written consent.  (D.E. 47 at 30.)  Country Life states claims for breach of contract, misappropriation of trade secrets, violation of the Theft Liability Act, and unfair competition.  (D.E. 47 at 30-34.)

Third Party Defendant DGS also filed a counterclaim against Country Life and Hall on January 10, 2011.  The claims asserted in the Third Party Counterclaim are largely similar to those asserted in the Third Amended Complaint, though it only states a breach of contract claim with respect to the Facilitation Agreement, and does not state claims for libel, business disparagement, or theft.  (D.E. 53 at 10-13.)

Pending before the Court are Country Life's Motion to Dismiss for Failure to State a Claim, Motion for a More Definite Statement and Motion to Strike (D.E. 39), Hall's Motion to Dismiss for Lack of Personal Jurisdiction, Motion to Dismiss for Failure to State a Claim or Alternatively for More Definite Statement, and Motion to Strike (D.E. 40), and Defendants' Motion to Transfer Venue (D.E. 42).  These Motions are fully ripe.  (D.E. 57; D.E. 58; D.E. 61; D.E. 62; D.E. 69; D.E. 70; D.E. 71.)  The Court held oral arguments on the pending motions on February 10, 2011.

## III.    Discussion

The Court first considers Defendant Hall's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, then considers Defendants' Rule 12(b)(6) motions, motions to strike, and motions to transfer venue.

### A.    Rule 12(b)(2) Motion to Dismiss

A federal district court sitting in diversity may exercise personal jurisdiction over a foreign defendant if "(1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution."   Clemens v. McNamee, 615 F.3d 374, 378 (5th Cir. 2010).   As Texas's long arm statute "reaches to the constitutional limits, the question [the court] must resolve is whether exercising personal jurisdiction over the defendant offends due process."   Id.

"The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a foreign defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice. There are two types of minimum contacts: contacts that give rise to specific personal jurisdiction and those that give rise to general jurisdiction."   Clemens, 615 F.3d at 378 (citations omitted).   "Where a defendant 'has continuous and systematic general business contacts' with the forum state, the court may exercise general jurisdiction over any action brought against the defendant. Where contacts are less pervasive, the court may still exercise 'specific' jurisdiction 'in a suit arising out of or related to the defendant's contacts with the forum.'"   Jackson v. Tanfoglio Guiseppe, S.R.L., 615 F.3d 579, 584 (5th Cir. 2010) (citations omitted).

"General jurisdiction may be found when the defendant's contacts with the forum state are substantial, continuous, and systematic.  The continuous and systematic contacts

test is a difficult one to meet, requiring extensive contacts between a defendant and a forum. To confer general jurisdiction, a defendant must have a business presence in the forum state." Jackson, 615 F.3d at 584 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-19 (1984)). With respect to specific jurisdiction, the Fifth Circuit applies a three step analysis: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 271 (5th Cir. 2006) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)). If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable. Id.

Defendant Hall contends that this Court has neither general nor specific personal jurisdiction over him, in light of his limited contacts with Texas in his role as an officer of Country Life. Hall also argues that assertion of personal jurisdiction would offend traditional notions of fair play and substantial justice, and that Plaintiff's complaint does not establish personal jurisdiction because it lacks specific facts supporting the proper exercise of jurisdiction over him individually. (D.E. 40 at 4-11.) In response, Plaintiffs essentially concede that general jurisdiction is lacking, but contend that Hall is subject to specific personal jurisdiction for his actions in Texas. (D.E. 58 at 11.) Plaintiffs then provide eight separate "actions and contacts" by Hall, which, they argue, subject him to personal jurisdiction in Texas. These actions primarily involve phone and e-mail contact

between Hall and Hinson (and in some cases Walters) to discuss certain products. Plaintiffs contend that these calls and e-mails "totaled in the thousands." (D.E. 58 at 15.) Additionally, Hall was the signatory on three agreements at issue in this litigation. Plaintiffs also reference other contacts involving the disclosure of trade secrets, and other interactions between Plaintiffs and Hall, usually occurring when Hall was in Illinois and Plaintiffs were in Texas. (D.E. 58 at 15-16.) Plaintiffs argue that Hall's contacts with the forum are directly related to the claims against him, and contend that his actions demonstrate that the exercise of personal jurisdiction is proper. (D.E. 58 at 16.) Plaintiffs also contend that the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. (D.E. 58 at 18-19.)

Here, the Court focuses solely on specific jurisdiction, in light of Plaintiffs' reliance thereon. As noted above, a three part inquiry is necessary to determine whether the assertion of specific personal jurisdiction over Hall is proper.

### 1.    Minimum Contacts

First, the Court must determine whether Hall has "minimum contacts" with Texas, such that he "purposely directed [his] activities toward the forum state or purposefully availed [himself] of the privileges of conducting activities there." Seiferth, 472 F.3d at 271. The Court concludes that Hall's alleged contacts with Texas are sufficient for "minimum contacts" purposes.

As the Fifth Circuit has recognized, "[e]ven a single, substantial act directed towards the forum can support specific jurisdiction." Command-Aire Corp. v. Ontario Mechanical Sales and Service, Inc., 963 F.2d 90, 94 (5th Cir. 1992). The Court considers first the contracts at issue. In this case, Hall signed the contracts as a corporate

representative of Country Life.  Because Hall signed the contracts in a representative capacity, he urges application of the fiduciary shield doctrine.  (D.E. 40 at 8-9.)   The fiduciary shield doctrine "holds that an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation."  Stuart v. Spademan, 772 F.2d 1185, 1197 (5th Cir. 1985).  The Fifth Circuit has explained that "Texas' fiduciary-shield doctrine did not bar jurisdiction [when a corporate agent is] being sued for specific acts, which had reasonably foreseeable consequences within Texas. So while the fiduciary-shield doctrine could prohibit this court from ascribing acts of the [corporation] to [the corporate agent], it does not prohibit [the agent] from being held personally liable for his own tortious conduct simply because he is an officer of a corporation."  General Retail Servs., Inc. v. Wireless Toyz Franchise, LLC, 255 Fed. Appx. 775, 794-95 (5th Cir. 2007).  Stated differently, the doctrine "does not protect a corporate officer from specific personal jurisdiction as to **intentional torts or fraudulent acts** for which he may be held individually liable."  Cerbone v. Farb, 225 S.W.3d 764, 769 (Tex. App. - Houston [14 Dist.], 2007) (emphasis added).  The doctrine has been held to apply "to the exercise of general jurisdiction, not specific."  Barnhill v. Automated Shrimp Corp., 222 S.W.3d 756, 768 (Tex. App. – Waco 2007); Bray v. Cadle Co., 2010 WL 4053794, at *13 n.10 (S.D. Tex. Oct. 14, 2010) (citing Barnhill).

"Courts within the Fifth Circuit have recognized two exceptions to the fiduciary shield doctrine. First, courts may disregard the corporate form and exercise jurisdiction over an individual officer if the corporation is the 'alter ego' of the officer.  Second, the court may exercise personal jurisdiction over an officer who allegedly committed an

intentional tort directed at the forum state." <u>Sefton v. Jew</u>, 201 F. Supp. 2d 730, 743 (W.D. Tex. 2001).

Here, the fiduciary shield doctrine is not applicable because Plaintiffs are attempting to exercise specific rather than general jurisdiction over Hall. <u>Barnhill</u>, 222 S.W.3d at 768. Nevertheless, Texas courts have rejected the exercise of personal jurisdiction over the signatory on a contract who was acting in a representative capacity for a corporation. As one court has explained, because a "person [who] signs a contract in her corporate capacity . . . is not individually a party to the contract," a court lacks specific jurisdiction over a signatory with respect to a breach of contract claim. <u>Wolf v. Summers-Wood, L.P.</u>, 214 S.W.3d 783, 792 (Tex. App. – Dallas 2007). Similarly, in <u>Mort Keshin & Co., Inc. v. Houston Chronicle Publishing Co.</u>, the court explained, "[w]hen an agent negotiates a contract for its principal in Texas, it is the principal who does business in this state, not the agent. Moreover, because the agent has not entered into a contract and has not done any business in Texas, he has not done any act or consummated any transaction in Texas." 992 S.W.2d 642, 647 (Tex. App. – Houston [14th Dist.] 1999) (citations omitted). Because Hall signed the contracts at issue in only a representative capacity, the Court declines to assert personal jurisdiction over Hall on this basis (though, as discussed below, the Court concludes that it may exercise pendent personal jurisdiction over Hall with respect to the breach of contract claims).

The Court now considers Hall's other alleged activities in this case. The Fifth Circuit has explained, "[w]hen a nonresident defendant commits a tort within the state, or an **act outside the state that causes tortious injury within the state**, that tortious conduct amounts to **sufficient minimum contacts** with the state by the defendant to

constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor."  McFadin v. Gerber, 587 F.3d 753, 761 (5th Cir. 2009) (emphasis added).  "Even an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct."  Guidry v. U.S. Tobacco Co., Inc., 188 F.3d 619, 628 (5th Cir. 1999).  As one court has stated, "[a] nonresident who acts in an official capacity on behalf of a corporation may be subject to specific jurisdiction if he engaged in tortious or fraudulent conduct, directed at Texas, for which he may be held personally liable.  This is because a corporate officer is primarily liable for his own torts."  Doane v. Cooke, 2008 WL 4899169, *4 (Tex. App. – Austin Nov. 14, 2008).

Here, Plaintiffs allege that Hall was involved in much (if not all) of the tortious activity at issue in this case, including theft of trade secrets and interference with prospective contracts.  (D.E. 60 at 8-9.)  He was also involved in negotiations leading up to the signing of the contracts at issue, which Plaintiffs allege ultimately led to the disclosure of trade secrets.  Plaintiffs' claims for theft of trade secrets, unfair competition, and tortious interference with prospective contracts all involve alleged conduct by Hall and others at Country Life, which occurred during their interactions with Plaintiffs.  (D.E. 60 at 11-14.)  Although it is true that much or all of the alleged conduct occurred while Hall was outside of Texas, his alleged conduct gives rise to jurisdiction here because it constitutes "act outside the state that causes tortious injury" within Texas, specifically

upon Plaintiffs.   <u>McFadin</u>, 587 F.3d at 761.   These allegations are sufficient for "minimum contacts" purposes.

### 2.      Cause of Action arises out of forum-related contacts

The second consideration is whether "the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts." <u>Seiferth</u>, 472 F.3d at 271.  Here, Plaintiffs have stated claims for <u>inter alia</u> theft of trade secrets, unfair competition, and tortious interference with prospective contracts.   These causes of action arise out of Hall's forum-related contacts with Plaintiffs, as they are based upon Hall's alleged interactions with the Plaintiffs.  For example, Plaintiffs allege that their interactions with Hall (as well as others at Country Life) led to their disclosure of trade secrets, and Hall's subsequent alleged theft of those secrets.  As such, Defendant Hall's contacts are directly related to the causes of action against him.

### 3.      Fair and Reasonable

The third and final consideration is "whether the exercise of personal jurisdiction is fair and reasonable." <u>Seiferth.</u>, 472 F.3d at 271.  As the Supreme Court has explained, "the determination of the reasonableness of the exercise of jurisdiction in each case will depend on an evaluation of several factors. A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'" <u>Asahi Metal Industry Co. v. Superior Court</u>, 480 U.S. 102, 113 (1987).  "To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must

make a 'compelling case' against it. It is rare to say the assertion is unfair after minimum contacts have been shown."   Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 215 (5th Cir. 1999).

Here, Defendant has failed to meet his burden.  Hall focuses on the distance between Corpus Christi, Texas and Bloomington, Illinois, and claims that the "burden . . . of litigating in Texas is high."  (D.E. 40 at 10.)   He provides little else to substantiate his claims.   Considering the factors in Asahi, and Hall's failure to demonstrate the unreasonableness of litigating here, the Court concludes that assertion of personal jurisdiction is "fair and reasonable."

### 4.    Pendent Jurisdiction

The Court, having concluded that it has personal jurisdiction over Hall with respect to Plaintiff's cause of action for theft of trade secrets, unfair competition, theft and tortious interference with prospective contracts, now considers whether it has personal jurisdiction over Hall with respect to Plaintiffs' other causes of action.

The Court concludes that, given its personal jurisdiction over Hall for certain causes of action, it may assert jurisdiction over Hall for all causes of action based upon the concept of pendent personal jurisdiction.  As one court has explained, pendent personal jurisdiction "exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim." Rolls-Royce Corp. v. Heros, Inc., 576 F.Supp.2d 765, 783 (N.D. Tex. 2008) (citing United States v. Botefuhr, 309 F.3d 1263, 1272-73

(10th Cir. 2002)); <u>see also</u> <u>Conwill v. Greenberg Traurig, L.L.P.</u>, 2009 WL 5178310, at *8 (E.D. La. Dec. 22, 2009) (discussing pendent personal jurisdiction); <u>Pinnacle Label, Inc. v. Spinnaker Coating, LLC</u>, 2009 WL 3805798, at *6 (N.D. Tex. Nov. 12, 2009) (same). In other words, "once a district court has personal jurisdiction over a defendant for one claim, it may 'piggyback' onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction. A defendant who already is before the court to defend a federal claim is unlikely to be severely inconvenienced by being forced to defend a state claim whose issues are nearly identical or substantially overlap the federal claim. Notions of fairness to the defendant simply are not offended in this circumstance." <u>Rolls-Royce Corp.</u>, 576 F. Supp. 2d at 783 (internal citations omitted).

Although the Fifth Circuit has not yet expressly ruled on pendent personal jurisdiction, other circuits to consider the issue have uniformly approved pendent personal jurisdiction. <u>See, e.g.</u>, <u>Action Embroidery Corp. v. Atlantic Embroidery, Inc.</u>, 368 F.3d 1174, 1181 (9th Cir. 2004); <u>Robinson Eng'g Co., Ltd. Pension Plan & Trust v. George</u>, 223 F.3d 445, 449-50 (7th Cir. 2000); <u>Inamed Corp. v. Kuzmak</u>, 249 F.3d 1356, 1362 (Fed. Cir. 2001); <u>ESAB Group, Inc. v. Centricut, Inc.</u>, 126 F.3d 617, 628 (4th Cir. 1997); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1056-57 (2d Cir. 1993); <u>Oetiker v. Jurid Werke, G.m.b.H.</u>, 556 F.2d 1, 4 (D.C. Cir. 1977). Courts in the Fifth Circuit have also adopted and applied pendent personal jurisdiction. <u>See</u> <u>In re Enron Corp. Sec.</u>, 465 F. Supp. 2d 687, 705 n. 30 (S.D. Tex. 2006); <u>see also, e.g.</u>, <u>Rolls-Royce</u>

Corp., 576 F .Supp. 2d at 783; Conwill, 2009 WL 5178310, at *8; Oblio Telecom Inc. v. Patel, 711 F. Supp. 2d 668, 675-76 (N.D. Tex. 2008).

Here, Plaintiffs' causes of action all involve the same nucleus of operative fact, namely the course of dealing between Plaintiffs and Hall, over a period of several years, beginning with the first interactions between the parties.  All causes of action are closely related.  The assertion of pendent personal jurisdiction over Hall is therefore proper, for all causes of action.[3]  Hall's motion to dismiss due to lack of personal jurisdiction is therefore denied.

### B.     Rule 12(b)(6) Motion to Dismiss

Both Country Life and Hall move for dismissal for failure to state a claim, making several different arguments.  (D.E. 39; 40.)   The Court considers each argument in turn.

### 1.     Preemption of Claims Premised on Filing with USPTO

Defendants argue that any state law claims based upon their filings with the USPTO are preempted by federal law, under 28 U.S.C. § 1338 and the Supreme Court's decision in Christianson v. Colt Industries Operating Corp., 486 U.S. 800 (1988). Defendants contend that, because Plaintiffs' claims with respect to allegedly false filings with the USPTO necessarily depends on resolution of a substantial question of federal patent law, the law of preemption mandates dismissal of the Amended Complaint.  (D.E. 40 at 13-14.)  Plaintiffs disagree, arguing that their claims do not depend upon resolution of a substantial question of federal patent law, and rather are based upon Texas law and interactions between the parties.  There is "no issue of patent law" to be decided in resolving Plaintiffs' claims, they argue.  (D.E. 61 at 14-15.)

---

[3] However, as discussed below in the context of Defendant Hall's Rule 12(b)(6) motion, the Court dismisses Plaintiffs' claims against Hall for breach of contract, for failure to state a claim.

United States Code, Title 28, Section 1338(a) provides in relevant part, "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . . Such jurisdiction shall be exclusive of the courts of the states in patent . . . cases." 28 U.S.C. § 1338(a).  The test for preemption under Section 1338 is relatively straightforward.  The Supreme Court in <u>Christianson</u> explained, "§ 1338(a) jurisdiction . . . extend[s] only to those cases in which a well-pleaded complaint establishes either that federal patent law **creates the cause of action** or that the plaintiff's right to relief necessarily **depends on resolution of a substantial question of federal patent law**, in that **patent law is a necessary element** of one of the well-pleaded claims."  <u>Christianson</u>, 486 U.S. at 808-09 (emphasis added).  Importantly, "a case raising a federal patent-law defense does not, for that reason alone, 'arise under' patent law, 'even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.'"  <u>Id.</u>  The Court further explained, "[n]or is it necessarily sufficient that a well-pleaded claim alleges a single theory under which resolution of a patent-law question is essential.  If on the face of a well-pleaded complaint there are . . . reasons completely unrelated to the provisions and purposes of [the patent laws] why the [plaintiff] may or may not be entitled to the relief it seeks, then the claim does not 'arise under' those laws.  Thus, a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories."  <u>Id.</u> at 810 (citations omitted); <u>see also</u> <u>Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.</u>, 545 U.S. 308, 314 (2005) (stating, in case not involving patent law, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and

substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."); Logan v. Burgers Ozark Country Cured Hams Inc., 263 F.3d 447, 451 (5th Cir. 2001) (discussing Christianson); Haase v. Abraham, Watkins, Nichols, Sorrels, Agosto, and Friend, LLP, 2010 WL 519747, at *3 (E.D. Tex. Feb. 9, 2010) (preemption exists if the plaintiff "must prove a patent issue, such as infringement, validity, or scope, as a necessary element of the state law claim.") (citing Christianson).

In this case, Plaintiffs state claims for (1) breach of contract, (2) theft of trade secrets and confidential information, (3) unfair competition, (4) libel and business disparagement, (5) theft, and (6) tortious interference with prospective relations. Defendants contend that preemption exists here because Plaintiffs' claims rely in large part upon Defendants' allegedly false filing before the USPTO, and this allegation would "necessarily require[] the court to examine the contents of the protest under USPTO procedures." (D.E. 39 at 5.)  In arguing preemption, Defendants rely upon the second circumstance described in Christianson, namely that Plaintiffs' right to relief "necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." Christianson, 486 U.S. at 808-09.  Here, Plaintiffs contend that USPTO protest stated "that the description in the '326 application contained information which was owned by and confidential to Country," and "contained numerous trade secrets."  (D.E. 60 at 10.)  The Court finds this connection insufficient to give rise to preemption under Section 1338(a).  Though Defendants' allegedly false filings before the USPTO will certainly be a part of Plaintiffs' case, it cannot be said at this point that resolution of the claims necessarily depends upon

"resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims."   Christianson, 486 U.S. at 809. Other courts have rejected this argument in similar circumstances.   As one court explained, "Defendants' allegedly fraudulent conduct before the USPTO will no doubt be a large part of the proceedings in this action.   But the significance of defendants' conduct before the USPTO is not that it forms the exclusive theory upon which plaintiff's claims are based, but rather, that it provides probative evidence supporting plaintiff's claims that defendant has unlawfully disclosed and used plaintiff's trade secrets, has breached the parties' contract, and has made false representations to the plaintiff."   Altavion, Inc. v. Konica-Minolta Sys. Lab., Inc., 2008 WL 2020593, at *6 (N.D. Cal. May 8, 2008); see also Neev v. Choi, 2008 WL 4531817, at *4-5 (N.D. Cal. Oct. 7, 2008) ("[T]he mere fact that a state cause of action requires the court to examine a patent or discuss patent-related laws is not sufficient to confer federal patent jurisdiction.").   The same is true here. Defendants' communications with the USPTO are certainly relevant and important, but they do not transform Plaintiffs' claims into ones "arising under" patent law.

The Court concludes that Plaintiffs' claims are not preempted by federal patent law under 28 U.S.C. § 1338, and thus should not be dismissed on this basis.

### 2.   USPTO Filings Subject to Absolute Immunity

Defendants next argue that the filings before the USPTO are subject to absolute immunity under the Noerr-Pennington doctrine, and subject to quasi-judicial proceeding immunity.  (D.E. 39 at 6-10; D.E. 40 at 16-19.)   Plaintiffs dispute the applicability of these doctrines.  (D.E. 61 at 15-16.)

a.    __Noerr-Pennington__ Doctrine

The well established Noerr-Pennington doctrine "allows individuals or businesses to petition the government, free of the threat of antitrust liability, for action that may have anticompetitive consequences. Noerr-Pennington protection is grounded on the theory that the right to petition guaranteed by the First Amendment extends to petitions for selfish, even anticompetitive ends." Brown & Root, Inc. v. Louisiana State AFL-CIO, 10 F.3d 316, 325 (5th Cir. 1994) (citing Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961); United Mine Workers of America v. Pennington, 381 U.S. 657 (1965)); see also Bryant v. Military Department of Miss., 597 F.3d 678, 690 (5th Cir. 2010) ("The Noerr-Pennington doctrine holds that the right to petition the government for redress is generally immune from antitrust liability unless the petitioning activity is a 'sham.'").  "Although the Noerr-Pennington doctrine initially arose in the antitrust field, other circuits have expanded it to protect first amendment petitioning of the government from claims brought under federal and state laws, including section 1983 and common-law tortious interference with contractual relations. . . .  There is simply no reason that a common-law tort doctrine can any more permissibly abridge or chill the constitutional right of petition than can a statutory claim such as antitrust." Video Int'l Production, Inc. v. Warner-Amex Cable Comms., Inc., 858 F.2d 1075, 1084 (5th Cir. 1988).   Despite its broad application, the Fifth Circuit has recognized that Noerr-Pennington is inapplicable to conduct "not designed to influence policy, which is all the Noerr-Pennington rule seeks to protect." Woods Exploration & Producing Co. v. Aluminum Co. of Am., 438 F.2d 1286, 1298 (5th Cir. 1971).

Defendants' alleged actions do not appear geared towards "influenc[ing] policy" in the way meant to be protected by Noerr-Pennington, or more generally constitute a petitioning of the government entitled to immunity.  More importantly, Defendants are accused of making false statements to the USPTO in the protest.  The law is clear that Noerr-Pennington "does not protect deliberately false or misleading statements."  U.S. v. Phillip Morris USA, Inc., 566 F.3d 1095, 1123 (D.C. Cir. 2009); see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 743 (1983) ("false statements are not immunized by the First Amendment right to freedom of speech.").  Any such alleged statements, therefore, are not entitled to immunity.  Finally, the Court notes that despite the relatively broad application of Noerr-Pennington, Defendants have provided no cases extending Noerr-Pennington to circumstances closely analogous to those present here, nor has the Court discovered any in its independent research.  There thus is no basis for dismissing Plaintiffs' claims based upon the Noerr-Pennington doctrine.

### b.    Quasi-Judicial Proceeding Immunity

Defendants also contend that they are immune with respect to any statements made in a USPTO proceeding, due to quasi-judicial proceeding immunity.  (D.E. 39 at 7-10.)  Plaintiffs disagree.  (D.E. 62 at 11-12.)

The common law of both Texas and District of Columbia (the location of the U.S. Patent Office) recognize quasi-judicial immunity.  In Texas, quasi-judicial immunity "extends to statements made in quasi-judicial proceedings before governmental executive officers, boards, and commissions which exercise quasi-judicial powers." Wal-Mart Stores, Inc. v. Lane, 31 S.W.3d 282, 290 (Tex. App. – Corpus Christi 2000); see also Collins-Pearcy v. Mediterranean Shipping Co. (USA) Inc., 698 F. Supp. 2d 730, 766

(S.D. Tex. 2010).   Similarly, District of Columbia law "has long recognized an absolute privilege for statements made preliminary to, or in the course of, a judicial proceeding, so long as the statements bear some relationship to the proceeding."  Oparaugo v. Watts, 884 A.2d 63, 79 (D.C. 2005).   The question is whether such immunity may be applied in the circumstances present here.

Defendants rely largely upon Ball v. Xidex, 967 F.2d 1440 (10th Cir. 1992) to support their assertion of quasi-judicial immunity in this context.   There, the court held that "private lawyers are entitled to absolute immunity from charges of defamation based on statements in the quasi-judicial setting of PTO proceedings."  Id. at 1445.   The court cautioned, however, that "absolute immunity represents a license for counsel to speak freely in PTO proceedings; it is not a license to commit intentional torts."  Id.  The court thus reached the merits of plaintiff's claims of "intentional interference with protected property interests, intentional interference with prospective business relationships, and unfair competition."  Id. at 1445.   Deferring to the district court's findings of fact, the Tenth Circuit affirmed.  Id. at 1446.

The Court does not find Ball persuasive in this context for several reasons.  First, Ball has not been cited in this Circuit, nor does it appear that similar reasoning has been endorsed here.   In fact, outside the Tenth Circuit, Ball has been cited sparingly, and has not garnered significant support.   Second, even if the Court were to accept Ball, that decision acknowledged that quasi-judicial immunity was "not a license to commit intentional torts,"  967 F.2d at 1445, of which Defendants are presently accused.   Finally, Defendants' filing of a protest before the USPTO is only one element of Plaintiffs' claims.   Even if Defendants were entitled to immunity for claims made to the USPTO,

this would not shield them from liability for all other actions at issue in this litigation. As such, the Court must conclude that Defendants are not entitled to quasi-judicial immunity, and declines Defendant's request to dismiss on this basis.

### 3.    Satisfaction of <u>Twombly</u> and Rule 9(b)

#### a.    Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, Plaintiff's Complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations' are not required." <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

However, the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" <u>Id.</u> at 1949 (quoting <u>Twombly</u>, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> at 1949 (citing <u>Twombly</u>, 550 U.S. at 556).   A court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," which "do not permit the court to infer more than the mere possibility of misconduct." <u>Id.</u> at 1949-50.  A motion to dismiss under Rule 12(b)(6) is "viewed with disfavor and is rarely granted." <u>Priester v. Lowndes County</u>, 354 F.3d 414, 418 (5th Cir. 2004).

#### b.    Country Life's Arguments

##### 1.    Breach of Contract Claims

Country Life argues that Plaintiffs' breach of contract claims do not comply with <u>Twombly</u>, as Plaintiffs fail to allege how Defendants breached the contracts or how

Plaintiffs were damaged by the alleged breach.  (D.E. 39 at 11-12.)   Plaintiffs contend

that their breach of contract claim has been properly pled.  (D.E. 61 at 16-17; D.E. 62 at

16-17.)

Under Texas law, the elements of a claim for breach of contract are "(1) the

existence of a valid contract; (2) performance or tendered performance by the plaintiff;

(3) breach of the contract by the defendant; and (4) damages sustained as a result of the

breach."  B & W Supply, Inc. v. Beckman, 305 S.W.3d 10, 16 (Tex. App. – Houston [1st

Dist.] 2009).[4]   Here, although Plaintiffs have alleged the existence of three valid

contracts, and their own performance under those contracts, they have not sufficiently

alleged the manner in which those contracts were breached, or the damages that they

have sustained due to the alleged breach.  This cause of action must be repled, consistent

with Twombly.

## 2.    Theft of Trade Secrets and Confidential Information

Country Life argues that Plaintiffs have not sufficiently stated a claim for theft of

trade secrets and confidential information, as there are no allegations that (1) describe the

trade secret or confidential information, (2) demonstrate that Country Life used

confidential information or disclosed it to a third party, or (3) explain how Plaintiffs were

damaged.  (D.E. 39 at 12.)  Plaintiffs respond that this cause of action has been properly

pled.  (D.E. 62 at 17.)

Under Texas law, a cause of action for common law theft or misappropriation of a

trade secret or confidential information requires showing: "(1) existence of a trade secret,

---

[4] Defendants dispute the applicability of Texas law in this lawsuit, but state "[f]or purposes of these
motions only, it is assumed that Texas law applies as the determination of which State's law applies is not
necessary to decide these motions."  (D.E. 40 at 2.)  Thus, choice of law issues are not presently before the
Court for determination.

(2) breach of a confidential relationship or improper discovery of a trade secret, (3) use of the trade secret without the plaintiff's authorization, and (4) resulting damages." Calce v. Dorado Exploration, Inc., 309 S.W.3d 719, 737-38 (Tex. App. – Dallas 2010). "A trade secret is any formula, pattern, device, or compilation of information, which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it. Customer lists, pricing information, client information, customer preferences, buyer contacts, blueprints, market strategies, and drawings have all been recognized as trade secrets." Texas Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc., 300 S.W.3d 348, 366-67 (Tex. App. – Dallas 2009) (citations omitted).

Here, Plaintiffs have not fully identified the specific trade secret they claim to have been stolen, nor the manner in which Country Life used that information or shared it with third parties.  As to damages, Plaintiffs allege that they "have been irreparably harmed to an extent not yet determined," and discuss the "financial impact" of Defendants' actions through the loss of "substantial business," as well as the effects upon Hinson's "health," but provide no specifics.  (D.E. 60 at 9-10.)  This cause of action must be repled, consistent with Twombly.

### 3.    Unfair Competition

Country Life next contends that Plaintiffs' unfair competition claim is improperly alleged, as none of the elements of this cause of action are stated in the complaint.  (D.E. 39 at 12-13.)  Plaintiffs disagree.  (D.E. 62 at 17.)

The elements of a cause of action for unfair competition by misappropriation in Texas are: "(i) the creation of plaintiff's product through extensive time, labor, skill and

money, (ii) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (i.e., a 'free ride') because defendant is burdened with little or none of the expense incurred by the plaintiff, and (iii) commercial damage to the plaintiff."  Dresser-Rand Co. v. Virtual Automation Inc., 361 F.3d 831, 839 (5th Cir. 2004) (citing United States Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc., 865 S.W.2d 214, 218 (Tex. App.-Waco 1993, writ denied).  Texas courts have explained that "misappropriation law is specially designed to protect the labor - the so-called 'sweat equity' - that goes into creating a work."  Id.

Once again, Plaintiffs must more specifically plead the particular circumstances leading to the claim of "unfair competition," such the specific product at issue, how Plaintiffs' product was used by Defendants in competition with Plaintiffs, and how that resulted in "commercial damage" to Plaintiffs.

### 4.        Libel and Business Disparagement

Country Life contends that Plaintiffs' libel and business disparagement claim should be dismissed because there are insufficient factual allegations regarding any statements Country Life may have made, and because any allegations of fraud fail to comply with Rule 9(b).  Plaintiffs again contend that this cause of action has been sufficiently pled.  (D.E. 62 at 17-18.)

In Texas, libel and business disparagement are "two separate and distinct claims." Kinetic Concepts, Inc. v. Bluesky Medical Corp., 2005 WL 3068209, at *4 (W.D. Tex. Nov. 1, 2005) (citing Hurlbut v. Gulf Atl. Life Ins. Co., 749 S.W.2d 762 (Tex. 1987)).  A business disparagement claim requires proof of: "(1) publication by the defendant of false and disparaging words about the plaintiff; (2) malice; (3) lack of privilege; and (4) special

damages to the plaintiff."  Flour Enterprises, Inc. v. Conex Int'l Corp., 273 S.W.3d 426, 433 (Tex. App. – Beaumont 2008).  In contrast, to recover for libel, a plaintiff must prove that the defendant: "(1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement."  Pisharodi v. Barrash, 116 S.W.3d 858, 861 (Tex. App. - Corpus Christi, 2003).  The term "publication" as used in this context means to be "communicated orally, in writing, or in print to some third person capable of understanding their defamatory import and in such a way that the third person did so understand."  Austin v. Inet Technologies, Inc., 118 S.W.3d 491, 496 (Tex. App. – Dallas 2003).  A statement is "defamatory" if it "tends to harm the reputation of a person, or to deter third persons from associating or dealing with the person.  If a communication does not either injure a person's reputation or impugn his character, the language is not defamatory and is not actionable."  In re Jennings, 203 S.W.3d 32, 36 (Tex. App. – San Antonio 2006); see also Henriquez v. Cemex Management, Inc., 177 S.W.3d 241, 252 (Tex. App. – Houston [1st Dist.] 2005) ("For a statement to be actionable as defamatory, the plaintiff must establish that the statement referred to the plaintiff . . . A statement is defamatory if the words tend to injure a person's reputation, exposing the person to public hatred, contempt, ridicule, or financial injury.").

Here, the primary allegations relevant to the libel and business disparagement claims are Country Life's protest to the USPTO, as those were "published."  According to the Complaint, the protest stated "that the description in the '326 application contained information which was owned by and confidential to Country."  (D.E. 60 at 10.)   The

pleadings are sufficient here.  Plaintiffs have alleged that Country Life filed a false declaration with the USPTO, namely that Plaintiffs did not own the information they submitted to the Patent Office, and such statements could be considered "defamatory." These claims are sufficient at the pleading stage.

Defendants also argue that Plaintiffs' allegations of fraud in this count fail to satisfy Rule 9(b).  (D.E. 39 at 13-14.)   Country Life contends that Plaintiffs "fail to allege the specifics of the fraudulent inducement, including when it occurred, what specifically was said, how the Plaintiffs relied on it or how they were damaged by this reliance."  (D.E. 39 at 14.)  Plaintiffs respond that they "can hardly be more specific as to the fraud at this point in the litigation."  (D.E. 62 at 18.)

Federal Rule of Civil Procedure 9(b) provides, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The Fifth Circuit has a "relatively strict interpretation of Rule 9(b)," and requires a plaintiff "to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  Nathenson v. Zonagen Inc., 267 F.3d 400, 412 (5th Cir. 2001).  This standard is satisfied.  Here, Plaintiffs allege that the "false publication was made after Country and Hall fraudulently induced Plaintiffs to abandon a previous patent application, causing damages to Plaintiffs."  (D.E. 60 at 13.)  In support of the fraudulent inducement allegations, Plaintiffs claim that "[r]epresentatives of Country, including Dale Hall, informed Hinson and Walters that they believed they owned the information in the '326 application," and that "[o]n September 2, 2009, Ault Hootsell wrote to Hinson, through Skip Henkel, to demand that Hinson immediately withdraw the '326 application

on the ground that the '326 application contains Country's confidential and propriety information." Hinson conceded, preventing issuance of the patent. (D.E. 60 at 8.)    The allegations are sufficient at this stage to withstand scrutiny under Rule 9(b).  The Court denies Defendants' request to dismiss on this ground.

### 5.    Theft

Country Life argues that Plaintiffs have failed to adequately allege their theft claim, as their allegations are overly conclusory.  (D.E. 39 at 15.)  Plaintiffs again contend that their theft allegations are sufficient.  (D.E. 62 at 18.)

The Texas Theft Liability Act provides, "a person who commits theft is liable for the damages resulting from the theft."  Tex. Civ. Prac. & Rem. Code § 134.003(a).  The "Theft Liability Act provides civil liability for certain acts proscribed by the Texas Penal Code, including unlawfully appropriating a trade secret."   Glattly v. Air Starter Components, Inc., __ S.W.3d __, 2010 WL 3928480, at *16 (Tex. App. - Houston [1 Dist.], 2010).  Under the Penal Code, "[a] person commits an offense [of theft] if he unlawfully appropriates property with intent to deprive the owner of property."  Tex. Penal Code § 31.03(a).  An appropriation of property is unlawful if: "(1) it is without the owner's effective consent; [or] (2) the property is stolen and the actor appropriates the property knowing it was stolen by another; . . . ."  Tex. Penal Code § 31.03(b).

Under the Texas Theft Liability Act, "theft" means "unlawfully appropriating property or unlawfully obtaining services as described by" the Penal Code, which includes the theft of trade secrets. Tex. Civ. Prac. & Rem. Code § 134.002(2); Tex. Penal Code § 31.05; see SP Midtown, Ltd. v. Urban Storage, L.P., 2008 WL 1991747, at *5 & n.4 (Tex. App. - Houston [14 Dist.] 2008) (discussing theft of trade secret under Theft

Liability Act).   As opposed to the common law theft of trade secrets cause of action, this is a statutory cause of action.  See, e.g., M-I LLC v. Stelly, __ F. Supp. 2d __, 2010 WL 3257972, at *4, *9 (S.D. Tex. Aug. 17, 2010); FMC Int'l A.G. v. ABB Lummus Global, Inc., 2005 WL 1745465, at *1, 2-4 (S.D. Tex. July 22, 2005) (stating both common law and statutory theft of trade secret claims).

Here, Plaintiffs' response states that this claim is "based upon an intentional act of theft that includes Plaintiffs' trade secrets."  (D.E. 62 at 18.)    As stated above with respect to the common law theft of trade secrets cause of action, Plaintiffs have not properly identified the specific trade secret they claim to have been stolen, nor other details necessary to fully state this cause of action.  Moreover, the Court is also unclear as to whether Plaintiffs intend to rely upon the same conduct with respect to both their common law theft of trade secrets and statutory theft claim.  Plaintiffs must specify whether or not the conduct underlying both causes of action (common law and statutory) is the same, or, if different conduct is alleged, which conduct relates to each cause of action.  As such, this cause of action must be repled.

### 6.    Tortious Interference with Prospective Contract

Finally, Country Life argues that Plaintiffs' tortious interference with prospective contract claim fails to satisfy the Twombly standard, and should therefore be dismissed. (D.E. 39 at 15-16.)  Plaintiffs state that they have "provided exacting, detailed evidence of the interference and plead all required elements of the causes of action."  (D.E. 62 at 18.)

Under Texas law, a claim for tortious interference with prospective contract requires: "(1) a reasonable probability that the parties would have entered into a

contractual relationship; (2) an 'independently tortious or unlawful' act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of his conduct; and (4) the plaintiff suffered actual harm or damage as a result of the defendant's interference."  Faucette v. Chantos, 322 S.W.3d 901, 914 (Tex. App.-Houston [14 Dist.], 2010); see also Texas Integrated Conveyor Systems, Inc. v. Innovative Conveyor Concepts, Inc., 300 S.W.3d 348, 367 (Tex. App.- Dallas, 2009).

In this case, Plaintiffs allege in the Third Amended Complaint that there was a reasonable probability that they would have entered into or continued business relationships with "American General Life, Assurity Life Insurance Co, Fidelity Security Life, ING Life US, Mutual of Omaha, Nationwide Life Insurance, Securian Financial (Minnesota Life), and other persons and companies."  (D.E. 60 at 13-14.)  Plaintiffs have not, however, explained which tortious conduct prevented these business relationships from developing, Defendants' knowledge as to the effects of their conduct, nor their damages.  This cause of action must too be repled.[5]

---

[5] In their Reply, Defendants note that Plaintiffs' new claims for quantum meruit and unjust enrichment cannot succeed in light of the existence of actual contracts between the parties.  (D.E. 70 at 4-5.) Generally, "a plaintiff who seeks to recover the reasonable value of services rendered or materials supplied will be permitted to recover in quantum meruit only when there is no express contract covering those services or materials."  Truly v. Austin, 744 S.W.2d 934, 936 (Tex. 1988).  As to unjust enrichment, one court has explained that "[u]njust enrichment, itself, is not an independent cause of action . . . .  The doctrine applies the principles of restitution to disputes where there is no actual contract, based on the equitable principle that one who receives benefits that would be unjust for him or her to retain ought to make restitution."  Casstevens v. Smith, 269 S.W.3d 222, 229 (Tex. App. – Texarkana 2008) (citations omitted).  These claims, however, may be stated in the alternative to a breach of contract claim.  See, e.g., Wynne v. Citibank (South Dakota) N.A., 2008 WL 1848286, at *1 (Tex. App. – Amarillo Apr. 25, 2008) ("Citibank's suit sought recovery of the $34,276.27 balance of the two accounts under theories of breach of contract, account stated, open account, and, in the alternative, quantum meruit and unjust enrichment."). The Court considers these to be alternative claims, and allows them to proceed for the time being.  See Tatum v. Tatum, 606 S.W.2d 31, 33 (Tex. App. – Corpus Christi 1980) ("[T]here certainly is nothing to prevent plaintiff from pleading alternative theories of express contract and quantum meruit.").

c.     **Hall's Arguments**

1.     **Breach of Contract**

With respect to the breach of contract causes of action, Defendant Hall contends that the allegations are insufficient because they do not allege that he was a party to any of the contracts at issue, and there are no specific allegations against him. (D.E. 40 at 19-20.)   In response, Plaintiffs contend that Hall individually participated in the alleged wrongdoing at issue.  (D.E. 61 at 16-18.)

In this case, there is no dispute that Mr. Hall is not himself a party to any of the contracts at issue, but rather he signed the contracts as a corporate representative of Country Life.  Plaintiffs' Third Amended Complaint states, with respect to the three contracts at issue, "PAG and Country entered into a valid contract."  (D.E. 60 at 10-11.) In all three cases, Mr. Hall signed the contracts under the title "Vice President Chief Life/Health Actuary, Appointed Actuary & Illustration Actuary," for "Country Life Insurance Company," or something to that effect.   (D.E. 57-1 at 14 (July 22, 2008 Exclusivity Agreement); D.E. 57-2 at 10 (February 8, 2007 Mutual Confidentiality Agreement); D.E. 57-2 at 22 (September 22, 2008 Facilitation Agreement).)  The issue therefore is whether Hall may be liable for breach of contract in his role as a corporate agent or signatory on the contracts.

It is well established that "[a]n agent is not ordinarily liable under the contract he executes on behalf of his principal, so long as his agency is disclosed, but he is personally liable if his acts breach an independent duty."  Westmoreland v. Sadoux, 299 F.3d 462, 466-67 (5th Cir. 2002); Restatement (Third) Agency § 6.01 ("When an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal, (1) the

principal and the third party are parties to the contract; and (2) the agent is not a party to the contract unless the agent and the third party agree otherwise."); <u>Roe v. Ladymon</u>, 318 S.W.3d 502, 521 (Tex. App. Dallas 2010) ("[A]n agent for a disclosed principal is not liable on the principal's contract . . . ."); <u>Rugaart v. Rodriguez</u>, 2003 WL 22671571, at *2 (Tex. App. – Corpus Christi 2003) ("As a general rule, an agent is not liable for the contracts of the principal.").  In Texas, a "corporate officer or director may not be held liable for the corporation's breach of contract **unless he or she acts in bad faith or is guilty of a conflict of interest**."  <u>Lopez v. State Farm Mut. Auto. Ins. Co.</u>, 2008 WL 2744609, at *6 (Tex. App. - Corpus Christi, 2008) (emphasis added).  In fact, "an officer or director [of a corporation] may not be held liable in damages for inducing the corporation to violate a contractual obligation, provided that the officer or director acts in good faith and believes that what he does is for the best interest of the corporation."  <u>Pabich v. Kellar</u>, 71 S.W.3d 500, 507 (Tex. App. - Fort Worth 2002) (citing <u>Maxey v. Citizens Nat'l Bank</u>, 507 S.W.2d 722, 726 (Tex. 1974)).

In light of these principles, it follows that Plaintiffs cannot hold Hall liable for breach of contract due merely to his role as Country Life's signatory on the contracts.  Rather, there must be some allegation of bad faith or a conflict of interest.  The Third Amended Complaint, however, reveals no such allegations with respect to the contracts.  In fact, there are hardly any allegations regarding Hall's conduct as to the contracts, as separate from Country Life's.  Without any allegations suggesting that Hall can be personally liable for Country Life's alleged breach of contract, such claims cannot proceed.  The Court therefore concludes that Plaintiffs' breach of contract claims, as to Defendant Hall, must be dismissed.

2.    **Theft of a Trade Secret; Unfair Competition; Theft; Libel and Business Disparagement; Tortious Interference with Prospective Relations**

Hall argues that Plaintiffs' causes of action for theft of a trade secret, unfair competition, theft, and tortious interference with prospective relations must be dismissed or repled because they do not satisfy Twombly, and because Plaintiffs do not allege Hall's factual connection to any elements of the cause of action.

In contrast to breach of contract claims, it is well established that "[a] corporate agent who knowingly participates in tortious or fraudulent acts may be held individually liable to third persons even though he performed the act as an agent for the corporation." Grierson v. Parker Energy Partners 1984-I, 737 S.W.2d 375, 377 (Tex. App. - Houston [14 Dist.] 1987).  Further, "an officer of a corporation is liable for any tort committed by the corporation through him," and this is "true whether or not the officer personally benefits from the tort committed."  Gardner Machinery Corp. v. U.C. Leasing, Inc., 561 S.W.2d 897, 899 (Tex. App. – Beaumont 1978).  Thus, "[i]t is the general rule in Texas that corporate agents are individually liable for fraudulent or tortious acts committed while in the service of their corporation."  Doane v. Cooke, 2008 WL 4899169, at *4 (Tex. App. – Austin Nov. 14, 2008).   As another Texas court has explained, "[a] corporate officer . . . is always primarily liable for his own torts, even though the principal is also vicariously liable.  An employee may be held individually liable for an employer's tortious acts if he knowingly participates in the conduct or has knowledge of the tortious conduct, either actual or constructive."  Cass v. Stephens, 156 S.W.3d 38, 62 (Tex. App. – El Paso 2004) (citations omitted).

While Hall may be held liable for his own alleged tortious conduct, the Court finds that claims against him have not been sufficiently pled.  The Third Amended Complaint does not specifically describe how Hall was personally involved in the theft of a trade secret, unfair competition, theft, or tortious interference with prospective relations.  The allegations lack the specificity required under Twombly and must be repled, primarily for the same reasons as stated with respect to Country Life's Motion.

The Court concludes, however, that Plaintiffs' claims of libel and business disparagement are sufficiently pled under Twombly, for essentially the same reasons as stated above, and this cause of action need not be repled.

### 4.      Counterclaim and Third Party Counterclaim

During oral argument, Plaintiffs requested that Country Life's counterclaim be repled because it failed to comply with Twombly.  The Court, upon considering the counterclaim (D.E. 47 at 19-38), concludes that the same deficiencies found in the Third Amended Complaint also exist to a significant extent in Country Life's counterclaim. Defendant Country Life must re-plead its counterclaim causes of action for (a) breach of contract, (b) misappropriation of trade secrets, (c) violation of the Texas Theft Liability Act, and (d) unfair competition.

The Court also notes that Third Party Defendant Diversified Growth Solution's Counterclaim is substantially similar to the Third Amended Complaint, and therefore also contains many of the same deficiencies as noted above.  The Court therefore concludes Diversified Growth Solutions must re-plead its causes of action for (a) breach of contract, (b) theft of trade secrets and confidential information, (c) tortious interference with prospective contracts, and (d) unfair competition.

### C.    Rule 12(e) Motion for More Definite Statement

Pleading in the alternative, Defendants request a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).  (D.E. 39 at 16; D.E. 40 at 23.)

In contrast to a Rule 12(b)(6) Motion, a Rule 12(e) Motion is appropriate where "a pleading fails to specify the allegations in a manner that provides sufficient notice." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).   Rule 12(e) provides, "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.  The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired."   Fed. R. Civ. P. 12(e).   "[A] motion for more definite statement is generally disfavored and is used to provide a remedy only for an unintelligible pleading rather than a correction for lack of detail." Davenport v. Rodriguez, 147 F. Supp. 2d 630, 639 (S.D. Tex. 2001).

As the Court has granted Defendants' motion with respect to all causes of action except libel and business disparagement, the Court need not address this motion in any detail.  As to the libel and business disparagement claim, however, the Court notes that regardless of any shortcomings Plaintiffs' Complaint may possess, it most certainly is not "unintelligible," or so "vague and ambiguous" that Defendants cannot "reasonably prepare a response."   Defendants' request for a more definite statement is therefore denied.

### D.    Rule 12(f) Motion to Strike

Defendants Hall and Country Life seek to strike as immaterial and impertinent Paragraphs 25, 26, and 27 of Plaintiff's Second Amended Complaint. (D.E. 39 at 17-18.)

These paragraphs (1) allege that Wade Harrison of Country Life requested that Walters and Hinson discontinue speaking with him directly, and rather communicate through counsel; (2) allege that communications between parties' counsel in which counsel for Country Life asserted that Country Life did not claim any ownership interest in the information shared by Plaintiffs; and (3) describe discussions that occurred during an April 10, 2009 mediation/settlement meeting.  (D.E. 36 at 6-7.)   Defendants argue that these paragraphs should be stricken because the "paragraphs contain information regarding settlement discussions that are inadmissible under Rule 408 of the Federal Rules of Evidence," and the statements regarding the April 10, 2009 mediation violate the parties' Confidentiality, Mediation, and Reservation of Rights Agreement ("Confidentiality Agreement").  (D.E. 39 at 17; D.E. 40 at 23-24.)  Plaintiffs' Third Amended Complaint now removes paragraph 27, but the information contained in paragraphs 25 and 26 remain in place.  (Compare D.E. 36 ¶¶ 25-27 with D.E. 60 ¶¶ 29-31.)  Plaintiffs, however, contend that the motion to strike is moot.  (D.E. 62 at 19.)

Because the Third Amended Complaint still contains some of the same allegations, and because all pleadings remain part of the record, the Court addresses Defendants' Motion to Strike.  Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).   "The district court had ample discretion, under Rule 12(f) of the Federal Rules of Civil Procedure, to order stricken from the complaint any redundant or immaterial matter."  In re Beef Industry Antitrust Litig., 600 F.2d 1148, 1168 (5th Cir. 1979).

In this case, the parties entered into the Confidentiality Agreement, in which the parties agreement that discussions during the April 10, 2009 meeting "are confidential and for settlement purposes only, shall be maintained as confidential by the Parties, and **cannot be used in, or in connection with, any future litigation, arbitration or other judicial or quasi-judicial proceedings**.  Without limiting the foregoing in any way, the parties further agree and confirm that the April 10, 2009 meeting is being conducted pursuant to the Illinois Uniform Mediation Act . . . and Section 154.001 <u>et seq</u> of the Texas Civil Practice and Remedies Code, including specifically Section 154.073."  (D.E. 39, Exh. A (emphasis added).)  Both statutes referenced in the Confidentiality Agreement require confidentiality of communications made during mediation or alternative dispute resolution meetings.[6]

Here, the Court is not persuaded that paragraphs 25 or 26 of the Second Amended Complaint (paragraphs 29 and 30 of the Third Amended Complaint) should be struck under Rule 12(f).  The information contained in those paragraphs does not contain confidential information arising in the course of settlement negotiations, nor can the Court say it is "immaterial and impertinent" as this time.  As for Paragraph 27, the Court does find that this paragraph contains confidential statements made during the course of mediation, and their disclosure is contrary to the Confidentiality Agreements, as well as the relevant provisions of Illinois and Texas law.  Therefore, this paragraph may be struck from the Second Amended Complaint.  The Third Amended Complaint removes

---

[6] Under the Illinois Uniform Mediation Act, "[u]nless subject to the Open Meetings Act or the Freedom of Information Act, mediation communications are confidential to the extent agreed by the parties or provided by other law or rule of this State."  710 I.L.C.S. 35/8.  Similarly, Section 154.073 of the Texas Civil Practice and Remedies Code provides, "a communication relating to the subject matter of any civil or criminal dispute made by a participant in an alternative dispute resolution procedure, whether before or after the institution of formal judicial proceedings, is confidential, is not subject to disclosure, and may not be used as evidence against the participant in any judicial or administrative proceeding."  Tex. Civ. Prac. & Rem. Code § 154.073.

these statements, and no further striking of that Complaint is necessary.  Defendants'
Motion to Strike is therefore granted as to paragraph 27 of the Second Amended
Complaint only.

### E.    Motion to Transfer Venue

Finally, Defendants Hall and Country Life seek to transfer venue from this Court
to the U.S. District Court for the Central District of Illinois.  (D.E. 42.)  They contend
that this Court should transfer this action to the Central District of Illinois, under 28
U.S.C. § 1631, § 1406(a), or § 1404(a).  (D.E. 42 at 2.)  Plaintiffs oppose any such
transfer of venue.  (D.E. 57.)

The Court, having decided that it possesses personal jurisdiction over Defendant
Hall, concludes that transfer pursuant to 28 U.S.C. § 1406(a) or 28 U.S.C. § 1631 is
improper.  See 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a
case laying venue in the wrong division or district shall dismiss, or if it be in the interest
of justice, transfer such case to any district or division in which it could have been
brought."); 28 U.S.C. § 1631 ("Whenever a civil action is filed in a court . . . and that
court finds that there is a want of jurisdiction, the court shall, if it is in the interest of
justice, transfer such action or appeal to any other such court in which the action or
appeal could have been brought at the time it was filed or noticed . . . .").

The Court next considers transfer under 28 U.S.C. § 1404(a).  Section 1404(a)
provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a
district court may transfer any civil action to any other district or division where it might
have been brought."  28 U.S.C. § 1404(a).  District courts "have broad discretion in
deciding whether to order a transfer. But this discretion has limitations imposed by the

text of § 1404(a) and by the precedents of the Supreme Court and [the Fifth Circuit] that interpret and apply the text of § 1404(a)." In re Volkwagen of America, Inc., 545 F.3d 304, 311 (5th Cir. 2008) (internal citations and quotation marks omitted). As the Fifth Circuit has explained, "[t]he underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a). Thus, while a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege." Id. at 313 (internal citations omitted).

To obtain a transfer, the moving party must show good cause. "This 'good cause' burden reflects the appropriate deference to which the plaintiff's choice of venue is entitled. [W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer." In re Volkwagen, 545 F.3d at 315.

In evaluating a motion to transfer venue under Section 1404(a), "the first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004). Once the court makes this determination, it must then focus on "the language of § 1404(a), which speaks to the issue of 'the convenience of parties and witnesses' and to the issue of 'in the interest of justice.'" Id. The "convenience" determination "turns on a number of private and public interest factors,

none of which are given dispositive weight." Id. "The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." Id. The public concerns include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." Id. The factors relevant to the "interests of justice" include "the pendency of related litigation in another forum [and] delays due to docket congestion." Salinas v. O'Reilly Automotive, Inc., 358 F. Supp. 2d 569, 573 (N.D. Tex. 2005).

Defendants contend that the relevant public and private interest factors favor the Central District of Illinois. Defendants argue that (1) a substantial part of the events giving rise to this lawsuit occurred within that district (Bloomington, Illinois), (2) defendants and many witnesses are located in that district, and (3) the parties entered into the contracts at issue in that district. Defendants also argue that this suit has no connection to Corpus Christi, other than the fact that one potential witness resides there, and Plaintiffs' choice of venue is entitled to little weight. Finally, Defendants contend that the public interest factors also favor transfer, given Defendants' and witnesses' residence in the Central District of Illinois, and the likely applicability of Illinois law (at least with respect to the breach of contract claims). (D.E. 42 at 4-7.)

Plaintiffs strongly disagree with Defendants' analysis. Plaintiffs argue that transfer of venue should be denied because (1) the lawsuit is closely connected to the

Southern District of Texas, (2) Defendants unreasonably delayed in bringing their transfer motion, (3) a transfer of venue would result in long delays, and (4) Defendant Hall evaded service, causing further delay.   (D.E. 57 at 1.)    With respect to this litigation's connection to Texas, Plaintiff focuses primarily on the development of the innovative products at issue, and the interactions between the parties occurring at least partially within the state. (D.E. 57 at 12-13.)

As an initial matter, Defendants are correct that the Central District of Illinois is a district "in which the claim could have been filed," In re Volkswagen AG, 371 F.3d at 203, in light of Defendants' undisputed residency within that District.   28 U.S.C. § 1391(a)(1) ("A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State.").   The Court however, must consider the relevant private and public interest factors to determine if transfer is warranted.

The private factors, on balance, do not favor transfer.[7]   Considering first the relative ease of access to sources of proof, Defendants have argued that many witnesses and documentary evidence are located in Illinois (D.E. 42 at 6; D.E. 69 at 4-5), while Plaintiffs have countered that all of its evidence is located within this District, and the Court should not be persuaded by Defendants' listing of a large number of employees as potential witnesses (D.E. 57 at 15).   The Court is mindful that it "may not transfer a case

---

[7] Plaintiffs complain that Defendants delayed in seeking this transfer, as this lawsuit was filed on December 18, 2009, and the motion to transfer was not filed until December 22, 2010.  Defendants point to the fact that Country Life was not served until June 17, 2010, and Hall was not served until December 9, 2010. (D.E. 69 at 2.)  The Fifth Circuit has stated that a motion to transfer venue is to be made with "reasonable promptness," and courts "have considered a party's delay in denying a motion to transfer."  Peteet v. Dow Chemical Co., 868 F.2d 1428, 1436 (5th Cir. 1989). Because Defendants' motion fails on the merits, the Court need not belabor this issue.

where the result is merely to shift the inconvenience of the venue from one party to the other." TGI Friday's Inc. v. Great Northwest Restaurants, Inc., 652 F. Supp. 2d 750, 761 (N.D. Tex. 2009).  Such a shifting would likely occur here if the Court were to grant the transfer.  While it is likely that a transfer would aid Defendants, with regard to their witnesses and evidence, it would likely inconvenience Plaintiffs.  Moreover, while Defendants have noted the existence of multiple witnesses residing outside the Southern District, "the moving party must do more than make a general allegation that certain key witnesses are needed," and must "specifically identify the key witnesses and outline the substance of their testimony." Hupp v. Siroflex of America, Inc., 848 F. Supp. 744, 749 (S.D. Tex. 1994).  Defendants have not sufficiently done so here.  This factor therefore does not favor transfer.

Considering next "the availability of compulsory process to secure the attendance of witnesses," Defendant has not identified any specific witnesses whose attendance would have to be secured by compulsory process.  Most of the potential witnesses living in Illinois are Defendants' employees.  (See D.E. 77 (Country Life's Amended List of Persons with Relevant Knowledge, showing approximately 55 witnesses with a Bloomington, Illinois address).)  Though the Court cannot rule out the possibility that compulsory process may be necessary to secure certain witnesses, this has not been established with any certainty.  Moreover, the same difficulties could potentially arise if this action were transferred to Illinois, to the extent that there are witnesses residing within this District.  Finally, any witnesses residing in the Central District of Illinois who are employees of Defendant Country Life can be compelled to attend by their employer. See, e.g., M/G Transport Servs., Inc. v. Devall Towing & Boat Service of Hackberry,

Inc., 2000 WL 1140495, at *3 (E.D. La. Aug. 11, 2000) ("[A] defendant's motion to transfer under [28 U.S.C.] section 1404(a) may be denied when the witnesses are employees of the defendant and their presence can be obtained by the party.").

As for the costs of attendance for willing witnesses, the Court recognizes that despite Plaintiffs' arguments to the contrary (D.E. 57 at 18-19), witnesses based in Illinois will incur some costs if needed to come to Corpus Christi to testify. Nevertheless, the same is likely true for Plaintiffs' potential witnesses located in the Southern District.  At best, this factor is neutral.

Finally, the Court is aware of no "other practical problems that make trial of a case easy, expeditious, and inexpensive," that would favor a transfer to the Central District of Illinois.

Considering now the public factors, the Court finds no basis for transfer based upon "the administrative difficulties flowing from court congestion," as there is no backlog of cases in this Court, and the Court fully expects that this case may proceed to trial by September 2011, when it is currently set.  The first public interest factor does not favor transfer.

The second consideration, "the local interest in having localized interests decided at home," also does not favor transfer.  This case essentially involves Texas residents who have brought suit against non-Texas residents, relating to intellectual property conceived within this District, and business interactions between the parties, occurring on one side in Texas.  While Defendant's arguments favoring the Central District of Illinois are well taken, the Southern District too has an interest in "having localized interests decided at home."  Both districts have a significant interest in this matter.  See, e.g, Kelly

Law Firm, P.C. v. An Attorney for You, 679 F. Supp. 2d 755, 771 (S.D. Tex. 2009) ("Calliope argues that because its employees are all based in California and because 'the majority of the Plaintiffs are not Texas citizens,' the local interests favor venue in California.  This argument may prove too much, since it would favor transfer to a defendant's home territory in any situation in which a defendant in one state did business with citizens in multiple other states.  While California has a local interest in resolving the contract disputes of its citizens, Texas has the same interest."); Invitrogen Corp. v. General Elec. Co., 2009 WL 331889, at *4 (E.D. Tex. Feb. 9, 2009) ("[W]here a forum has identifiable connections to the events giving rise to the suit, this factor may support litigating the case in that forum.").  At best, this factor is neutral.

Third, as to the "familiarity of the forum with the law that will govern the case," the Court finds at this point that only Plaintiffs' cause of action for breach of contract potentially implicates Illinois law, in light of choice of law provisions specifying Illinois law.  (D.E. 57 at 14; D.E. 57-1 at 11-13 (Exclusivity Agreement); D.E. 57-2 at 9-10 (Mutual Confidentiality Agreement) (governed by Texas law); D.E. 57-2 at 12-14 (Exclusivity Agreement); D.E. 57-2 at 18-22 (Facilitation Agreement).)  Nevertheless, Plaintiffs' other causes of action are brought under Texas law, and Defendants have so far failed to demonstrate that Illinois law is applicable to Plaintiffs' other causes of action.[8]  Even if Illinois law were applicable to some of Plaintiff's causes of action, this would not favor transfer, as this Court is fully equipped to research and interpret the laws of other states, should that be necessary.  For this reason, the Court also does not find that transfer is warranted to avoid "unnecessary problems of conflict of laws of the

---

[8] The Court recognizes, however, that choice of law issues have not yet been addressed.

application of foreign law."  Neither party has presented evidence that any conflict of laws issues will occur absent transfer.  See Kelly Law Firm, P.C., 679 F. Supp. 2d at 771.

Upon considering all of the relevant factors, the Court concludes that the Central District of Illinois is not a clearly more convenient venue than the Southern District of Texas.  As the Fifth Circuit has explained, "when the transferee venue is not **clearly more convenient** than the venue chosen by the plaintiff, the plaintiff's choice should be respected."  In re Volkswagen of America, Inc., 545 F.3d at 315 (emphasis added). Transfer to the Central District of Illinois is therefore unwarranted.  As such, the Court must deny Defendants' Motion to Transfer Venue.  (D.E. 42.)

## IV.    Conclusion

For the reasons stated above, the Court (1) GRANTS IN PART AND DENIES IN PART Country Life Insurance Company's Motion to Dismiss for Failure to State a Claim, Motion for a More Definite Statement and Motion to Strike  (D.E. 39), (2) GRANTS IN PART AND DENIES IN PART Defendant Dale Hall's Motion to Dismiss for Lack of Personal Jurisdiction, Motion to Dismiss for Failure to State a Claim or, Alternatively, for More Definite Statement, and Motion to Strike (D.E. 40), and (3) DENIES Defendants Country Life Insurance Company's and Dale Hall's Motion to Transfer Venue. (D.E. 42).

The Court ORDERS as follows:

(1) Plaintiffs must re-plead their causes of action for (a) breach of contract, (b) theft of trade secrets and confidential information, (c) unfair competition, (d) theft, and (e) tortious interference with prospective contract, within fourteen (14) days of the entry of this Order.

(2) Third Party Defendant Diversified Growth Solutions, LLC must re-plead its Third Party Counterclaim causes of action for (a) breach of contract, (b) theft of trade secrets and confidential information, (c) unfair competition, and (d) tortious interference with prospective contracts, within fourteen (14) days of the entry of this Order.

(2) Defendant Country Life must re-plead its counterclaim causes of action for (a) breach of contract, (b) misappropriation of trade secrets, (c) violation of the Texas Theft Liability Act, and (d) unfair competition, within fourteen (14) days of the entry of this Order.

(3) Plaintiffs' breach of contract claim against Defendant Dale Hall is DISMISSED pursuant to Federal Rule of Civil Procedure 12(b)(6).

(4) Paragraph 27 of the Second Amended Complaint is hereby STRICKEN.

(5) All other requested relief is DENIED.

SIGNED and ORDERED this 11th day of February, 2011.

Janis Graham Jack
United States District Judge